[Civ. No. 8944. First Appellate District, Division One.—July 6, 1933.]

MAX E. HAYWARD et al., Respondents, v. E. A. WIDMANN et al., Appellants.

Lawler & Degnan, Barry Brannen and Newlin & Ashburn for Appellants.

Meserve, Mumper, Hughes & Robertson for Respondents.

THE COURT.—Plaintiffs brought this action to recover the balance owing them on a promissory note executed to plaintiffs Hayward by defendants; also to foreclose a lien against certain shares of stock which had been deposited with plaintiff Title Insurance and Trust Company as security for the payment of said note. Defendants by their answer denied liability on said note and alleged that they had been induced to enter into a contract for the purchase of 23,000 shares of the capital stock of the International Indemnity Company through the false representations of plaintiffs Hayward, and that the note sued upon represented a part of the purchase price of said stock. They also filed a cross-complaint in which they alleged that they were induced to enter into said contract for the purchase of said shares of stock by the said false representations, and asked judgment for $270,008.19. Judgment was rendered for plaintiffs for the balance owing on said note, and for the foreclosure of the lien against said shares of stock. From this judgment the defendants appeal.

On March 20, 1928, respondents and appellants entered into an agreement for the sale of the 23,000 shares of the capital stock of the International Indemnity Company to

appellants for the sum of $718,300, to be paid as follows: $10,000 at the date of the execution of said agreement, $190,000 on April 2, 1928, and for the remaining sum of $518,300 appellants executed their promissory note payable in installments of $20,000 on the first day of May, 1928, and the same amount on the first day of each and every month thereafter until the principal sum thereof had been paid, with interest at the rate of seven per cent per annum. Said agreement further provided that the 23,000 shares of the capital stock of the International Indemnity Company and 6,000 shares of the Keystone Capital Corporation should be deposited with the Title Insurance and Trust Company as collateral, to secure the payment of the said promissory note. On the same date (March 20, 1928) appellants entered into an agreement with the Title Insurance and Trust Company by which they agreed to deposit with said title company the 23,000 shares of the capital stock of the International Indemnity Company and the 6,000 shares of the capital stock of the Keystone Capital Corporation, to be held a pledge for the payment of said note. Under the terms of this pledge agreement the said title company became the trustee of said pledged stock and was authorized, upon default of payment, to sell said security and apply the proceeds to the payment of said note, interest and costs. Thereafter respondents caused to be issued to appellant Hansen the said 23,000 shares of the International Indemnity Company stock, and appellants deposited said stock, together with the 6,000 shares of the capital stock of the Keystone Capital Corporation, with the said title company as collateral security for the payment of said note.

Appellants paid to respondents the said $10,000 on the execution of said agreement and the $190,000 on the 2d of April, 1928, and on the 1st of May, and for the three succeeding months, paid to respondents the installments of $20,000 called for by said note. They then defaulted in their said payments. It appears from the evidence that while the note and agreement were dated as of March 20, 1928, the transaction was not consummated until March 27, 1928.

Appellants contend that they were induced to enter into the contract for the purchase of the said shares of stock through the false representations of respondents Hayward; that these false representations were that the contingent

liability of said International Indemnity Company for unsettled claims, and losses and expenses in connection therewith, had been accurately and fairly computed and that the reserves of said company posted against said unsettled claims, losses and expenses exceeded any possible contingent liability of the said company therefor by the sum of at least $150,-000. Upon conflicting evidence the trial court found against appellants upon this contention, and also found that while it was true respondent Max E. Hayward stated to appellants in December, 1927, that there was an equity of $150,000 in the reserves carried by the International Indemnity Company on its financial statement of September 30, 1927, for the payment of losses and expenses, this statement was made by the said Hayward as an expression of his opinion; that the appellants did not rely upon said opinion to enter into the said contract for the purchase of said shares of stock, nor were they thereby induced so to do.

On November 24, 1927, appellant Hansen sent a telegram to Max Hayward requesting an option on 21,000 shares of the capital stock of the International Indemnity Company. Following this telegram, negotiations were had between the parties and on December 7, 1927, an agreement was entered into between appellants and respondents Hayward by which, in consideration of $10,000, said respondents gave to appellants the option to purchase, on or before March 1, 1928, 21,000 shares of stock of said International Indemnity Company at $31.50 per share and 2,000 shares at $28.50 per share, all to be paid in cash not later than March 10, 1928.

On January 21, 1928, appellant Hansen employed Harwood E. Ryan, a member of the insurance auditing firm of Woodward, Fondiller and Ryan of New York, to go to Los Angeles to survey and audit the affairs of the International Indemnity Company and particularly to include in said audit the adequacy of the loss reserve. By virtue of said employment Ryan went to Los Angeles, where shortly thereafter he was joined by appellants. Max Hayward testified that during the course of Ryan's examination of the affairs of said company Ryan told him it appeared to him that the loss reserves were inadequate. Appellants also informed Max Hayward that Ryan had told them the loss reserves, in his opinion, were inadequate. Dan S. Hammack testified that about March 9, 1928, at a meeting at which appellants

were present, they said that according to Ryan's report the reserves were inadequate. Immediately after the said investigation by Ryan was completed Max Hayward received the following letter from appellants: "Mr. Max E. Hayward, International Indemnity Company, Los Angeles, Cal. Dear Sir: This will formally advise you that option in reference to sale of certain stock in the International Indemnity Co. wherein C. M. Hansen and E. A. Widmann were granted the right on Dec. 8th, 1927, to purchase 23,000 shares—will not for reasons already explained to you and your brother Sam T. Hayward, be exercised, and we hereby make formal demand for return of the $10,000 posted. C. M. Hansen. Our accountant found conditions quite different in many respects, and less advantageous to buyers, than shown by your statement of Sept. 30. Eugene A. Widmann." In answer to this communication Max Hayward wired Hansen refusing to return the $10,000 and Hansen in turn wired him that the amount was too small for a disagreement and that he was satisfied they would ultimately be of mutual assistance. Thereafter negotiations for the purchase of said shares of stock were renewed and on March 20, 1928, a written agreement was signed by the respective parties, but the deal was not finally consummated until March 27, 1928. There is some evidence that on March 21, 1928, and before the transaction was completed appellant Hansen was informed by A. Hall McAllister, the claims manager of the International Indemnity Company, that the loss reserve was inadequate. This was denied by Hansen, who claimed that he had no knowledge of the inadequacy of the loss reserve until after the deal had been closed.

The International Indemnity Company was engaged in the writing of a general fidelity and casualty business. In the course of this business claims would arise, some of which would be adjusted and settled over a period of months and others were resisted and defended in the courts. At the date of the agreement and negotiations there were some 8,000 unsettled claims existing against said company. Under these conditions the estimate of the reserve against loss contained in the statement of September 30, 1927, could not be mathematically calculated, and must have been so understood by appellant Hansen, who possessed wide experience in these

matters, since he had been engaged in similar insurance business continually from the year 1907.

It seems to be well settled that where there is any doubt whether a representation was intended and understood as a mere expression of opinion, as a statement of a fact, the question is not one of law, but one of fact for the court or jury. (*French* v. *Freeman*, 191 Cal. 579 [217 Pac. 515]; *Dickey* v. *Dunn*, 80 Cal. App. 724 [252 Pac. 770]; *Palladine* v. *Imperial Valley F. L. Assn.*, 65 Cal. App. 727 [225 Pac. 291]; *McKeever* v. *Locke-Paddon Co.*, 58 Cal. App. 51 [207 Pac. 1040]; *Stockton* v. *Hind*, 51 Cal. App. 131 [196 Pac. 122].) Furthermore, there is evidence that appellants did not rely on the statement of Max Hayward that the equity in the loss reserve was $150,000 as shown by the financial statement of September 30, 1927, but undertook an independent investigation of their own into the affairs of the International Indemnity Company and its loss reserve by employing Ryan, an expert, to make an audit of the affairs of said company, and particularly by direction of appellants was Ryan instructed to include in such audit the adequacy of the loss reserves.

In *Maxon-Nowlin Co.* v. *Norswing*, 166 Cal. 509 [137 Pac. 240, 241], the court used the following language: " 'To entitle a person to relief or redress because of a false representation, it is well settled that it is not enough to show merely that it was material, that it was known to be false, and that it was made with intent to deceive, but it must also be shown that it actually did mislead and deceive; or in other words, it was relied upon by the party complaining.' (Citing authorities.) "

In Pomeroy's Equity Jurisprudence, fourth edition, section 893, it is said: "If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled. . . . "

One who has actually investigated the truth of the representation, and is given full and fair facilities for doing so, and who acts upon his own judgment and knowledge, cannot be said to rely upon the representation. (*Colton* v. *Stanford*, 82 Cal. 351–383 [23 Pac. 16, 16 Am. St. Rep.

137] ; *Spinks* v. *Clark*, 147 Cal. 439 [82 Pac. 45] ; *San Jose Ranch Co.* v. *San Jose L. & W. Co.*, 132 Cal. 582 [64 Pac. 1097] ; *Shermaster* v. *California Bldg. etc. Co.*, 40 Cal. App. 661 [181 Pac. 409].) In the instant case Ryan was given full and free access to the records of said company and had full opportunity to examine into its affairs and its loss reserve. We are therefore of the opinion that appellants did not rely upon the representation of Max Hayward that the loss reserve as shown by the financial statement of September 30, 1927, was $150,000.

■ The note sued upon in this action provides that in case suit is commenced to collect it, or any part of it, appellants agree to pay such additional sum as the court may find reasonable as attorneys' fees. Appellants claim that the attorneys' fee of $20,000 is excessive. On behalf of respondents, reputable attorneys placed the value of the services rendered by these attorneys at a much larger figure than that allowed by the court. Appellants offered no evidence as to the value of these services. Taking into consideration the sum involved in this case, and that sixty-four days were consumed in the trial, we cannot say that $20,000 was an unreasonable amount to allow respondents as attorneys' fees.

The findings sufficiently cover the issues in this case and are supported by the evidence. The judgment is affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 1, 1933.

Thompson, J., dissented.