[Civ. No. 3209. Fifth Dist. Mar. 7, 1978.]

JOHN M. MEYERS et al., Defendants,
Cross-complainants and Appellants, v.
GUARANTEE SAVINGS AND LOAN ASSOCIATION,
Defendant, Cross-defendant and Respondent.

308

COUNSEL

Bernerd Libanti for Defendants, Cross-complainants and Appellants.

McCormick, Barstow, Sheppard, Coyle & Wayte and Gordon M. Park for Defendant, Cross-defendant and Respondent.

OPINION

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE AND FACTS

In May 1973 appellants John and Claire Meyers borrowed $20,000 from respondent Guarantee Savings and Loan Association. The terms and conditions of the loan were contained in a building loan agreement. The loan was secured by a deed of trust. In addition, appellants signed an authorization to disburse and acknowledged receipt of copies of Penal Code sections regarding offenses involving construction funds. The borrowed money was to be used to construct a house on property owned by appellants in Mariposa County. The appellants hired Francis Asbury, a licensed contractor, to build the house.

The financing procedure worked as follows: the loan proceeds were deposited in a special account bearing no interest and retained by respondent although owned by appellants. The loan funds were disbursed to contractor Asbury under a "voucher system." Respondent was required to pay Asbury money from the loan account when he submitted signed vouchers indicating certain work had been done on the house. Under the terms of the agreement, appellants promised to make inspections of the property and notify respondent if the construction was not satisfactory. The respondent was entitled to inspect the property at any time to see if the work was progressing in a satisfactory manner, but the agreement expressly provided that respondent did not assume the duties of a contractor or architect and was not required to make inspections.

During 1973 respondent made seven general inspections of the construction site to make sure that various parts of the construction had

been completed. Appellants made weekly inspections of the construction site. Appellant John Meyers noticed various departures from the building specifications. Appellants discussed their grievances with contractor Asbury and agreed to accept the changes as made.

Thereafter, appellant John Meyers contacted Clarence Follett of respondent Guarantee Savings in approximately December 1973 to complain of the changes in the construction plan. Appellant subsequently refused to pay contractor Asbury any more money. On April 15, 1974, Asbury filed his complaint to foreclose the mechanics lien against the premises. Appellants answered the complaint and cross-complained against both Asbury and respondent. The cross-complaint against Asbury alleged 12 breaches of contract and negligent designing, planning, and constructing of the home improvements. The cross-complaint against respondent alleged that it had made payments to Asbury when it knew or should have known that the construction work had not been done according to specifications or that certain expenses claimed to have been incurred by the contractor were in fact not incurred. Appellants further cross-complained against defendant Surety Company of the Pacific for indemnification based upon Asbury's contractor bond. Respondent then cross-complained against appellants to recover its attorneys fees in accordance with the terms of the contract.

On March 31, 1976, respondent moved for summary judgment. After reviewing the various contract documents, the points and authorities submitted in support and in opposition to summary judgment, and the depositions of John and Claire Meyers, Clarence Follett, and Francis Asbury, the trial court granted respondent summary judgment on the ground that there was no triable issue of fact in connection with the cause of action against it. The court entered judgment in accordance with said order on August 26. The court awarded respondent $1,000 in attorneys fees on its cross-complaint against appellants. Notice of appeal was filed on October 18, 1976.

## DISCUSSION

Appellants' arguments why the summary judgment in favor of respondent should be reversed are all premised on the theory that respondent owed appellants a duty to inspect regularly the construction of the house to see that the builder complied with the plans and specifications. For the reasons to be explained, no such duty existed.

The building loan agreement (par. 12) states that the *appellants* had the duty to inspect the construction and to notify the respondent if any part is unsatisfactory. The agreement also states that respondent had no duty to make any inspections and any such inspections undertaken were solely for its own benefit. Paragraph 12 states: "It is expressly understood and agreed that the Association does not assume the duties of contractor or architect, is not required to make any inspections of said improvement(s), does not represent that the amount of the funds deposited in the loan in process account is sufficient to complete said improvement(s), nor does it agree if said funds are not sufficient for that purpose, to complete said improvement(s) with its own or other funds, nor does its acceptance of this agreement constitute an approval of any covenants, conditions or restrictions, nor does it constitute a representation that the proposed improvement(s) conform to any existing covenants, conditions or restrictions; that any inspection which may be made of the proposed building by this Association are [*sic*] made solely for the benefit and protection of the Association, and the contractors and owners will not rely thereon but will make their own inspections during the course of the construction and if any labor or materials used therein, or any part thereof is not satisfactory to them, or if the contract is not cimplied [*sic*] with in any respect, they will immediately notify the Association in writing."

Appellant John Meyers admitted in his deposition that he read and understood this provision. He states, however, that he "assumed" that respondent would inspect the construction and notify him of any departures from the specifications. Even with this assumption appellants have not raised a triable issue of fact. ■ The interpretation of a contract is a question of law unless the interpretation turns upon the credibility of extrinsic evidence. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) ■ The clear language of a provision governs unless it leads to an absurdity (Civ. Code, § 1638). The undisclosed belief or intention of a party is irrelevant in the absence of fraud or mistake. (*Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [48 P.2d 13].)

■ Appellants attempt to avoid the clear language of the agreement by characterizing it as an adhesion contract,[1] yet this is of no avail.

---

[1]A contract of adhesion is a standardized contract prepared by one party to a transaction which, due to a disparity in bargaining power, must be accepted or rejected on a "take it or leave it" basis. (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 882 [27 Cal.Rptr. 172, 377 P.2d 284].) Any ambiguities must be construed against the drafter.

Absent an ambiguity, adhesion contracts are enforced according to their terms. (*Yeng Sue Chow* v. *Levi Strauss & Co.* (1975) 49 Cal.App.3d 315, 325 [122 Cal.Rptr. 816].) The ultimate question is whether the stronger party has disappointed the *reasonable expectations* of the other party. (*Id.*) No ambiguity or uncertainty exists in the present agreement. Because appellant John Meyers admitted to having read and understood the contract, his subjective expectations were not objectively reasonable.

Appellants next argue that respondent was their agent and as a fiduciary owed them the duty to inspect the ongoing construction and report any departures from specifications. Respondent concedes the agency relationship but correctly points out that its duty was limited to the scope of the agency set forth in the agreement. (Rest.2d Agency, §§ 376, 377; *Anderson* v. *Badger* (1948) 84 Cal.App.2d 736, 743 [191 P.2d 768].) Since the contract provided that respondent had no duty to inspect and since respondent's vice president, John Masiello, stated in his declaration that the occasional inspections he did make were very general and solely to protect respondent's security interest, the agency did not encompass a duty to protect appellants by inspecting the ongoing construction for departures from the specifications.

There is no evidence that respondent engaged in any activity outside the scope of the normal activities of a lender of construction monies. There also is no evidence of misrepresentations by respondent to appellants in connection with the loan and disbursement of monies or the construction of the house. Therefore, no duty of care arose to inspect the premises for the benefit of appellants. (See Civ. Code, § 3434; *Kinner* v. *World Sav. & Loan Assn.* (1976) 57 Cal.App.3d 724 [129 Cal.Rptr. 400]; *Fox & Carskadon Financial Corp.* v. *San Francisco Fed. Sav. & Loan Assn.* (1975) 52 Cal.App.3d 484 [125 Cal.Rptr. 549]; *Skerlac* v. *Wells Fargo Bank* (1971) 18 Cal.App.3d 1003 [96 Cal.Rptr. 434]; *Bradler* v. *Craig* (1969) 274 Cal.App.2d 466 [79 Cal.Rptr. 401]; cf. *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]; Gutierrez, *Liability of a Construction Lender Under Civil Code Section 3434: An Amorphous Epitaph to Connor* v. *Great Western Savings & Loan Association* (1977) 8 Pacific L.J. 1; Lascher, *Lending—Institution Liability for Defective Home Construction* (1970) 45 State Bar J. 338.)

Appellants' argument that the contractual provision stating that respondent is not obligated to inspect the building construction is in the

nature of a general release and therefore in violation of Civil Code sections 1541 and 1542, is undeserving of discussion.

The summary judgment awarding respondent $1,000 attorneys fees on respondent's cross-complaint against appellants is not an appealable order because the court did not rule on the other cause of action in the cross-complaint. However, the affirmance of the summary judgment against appellants on their cross-complaint against respondent would undermine any claim to reverse the award of attorneys fees.

The judgment is affirmed.

Hopper, J., and Tuttle, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.