[Civ. No. 18214. Fourth Dist., Div. One. Jan. 14, 1980.]

ROY J. WAGNER et al., Plaintiffs, Cross-defendants
and Appellants, v.
WILLIAM BENSON, JR., Defendant, and Respondent;
LLOYDS BANK CALIFORNIA, Defendant, Cross-complainant
and Appellant.

COUNSEL

Leo Shaw for Plaintiffs, Cross-defendants and Appellants.

Jerome L. Goldberg and Lesley A. Andrus for Defendant, Cross-complainant and Appellant and for Defendant and Respondent.

---

OPINION

BROWN (Gerald), P. J.—Orthodontist Roy Wagner and his wife, Carol, speculated in a cattle raising program offered by Mountain Shadows Ranch (MSR) in 1973. Their agreement authorized MSR to act as the Wagners' agent in buying, maintaining and marketing their cattle.

To finance the operation the Wagners borrowed from Lloyds Bank (Bank), consistent with an understanding prenegotiated by MSR. The loan agreement not only furnished money for buying a breeding herd, but also established a maintenance fund with the Bank from which capital was disbursed as needed by MSR.

Under the Bank agreement, the Wagners were required to pay off any amount necessary to maintain a 75 percent margin; that is, if the Wagners' loan obligation exceeded 75 percent of the value of the collateral (the cattle) as established by periodic appraisals, the Bank could request payment of the sum necessary to regain the proper margin (i.e., margin call).

It was one of those unfortunate times when beef prices declined and costs rose. In February 1974, the Wagners paid a margin call of $9,442 requested by the Bank to bolster the sagging value of the herd. After another appraisal in May 1974, the Bank demanded a second remittance of $19,849. The Wagners refused to pay. Their cattle were sold and the proceeds were applied to the balance due on the loan.

The Wagners, alleging the Bank had assured them the investment was "safe" and the margin calls would be minimal, sued in misrepresen-

tation for money damages. In an amended complaint, the Wagners added claims in negligence and bad faith allegedly arising from the Bank's handling of the loan transaction.

The Bank cross-complained to recover the deficiency on the promissory notes executed by the Wagners to secure the loan.

At trial, the Wagners stipulated to the validity of the notes. The trial court dismissed the Wagners' negligence and bad faith claims, limiting the triable issues to the misrepresentation question. The jury returned a verdict in favor of the Bank and judgment was entered accordingly.

Recovery of attorney's fees by the Bank, as provided by the loan agreement, was limited by the trial court to the reasonable costs of suing on the promissory notes. Fees incurred in defending against the fraud allegations were not included in the award.

The Wagners appeal on several grounds. The Bank cross-appeals on the issue of attorney's fees.

The Wagners contend the trial court erred in dismissing their negligence and bad faith causes of action. ■ Objection is taken to both the procedure followed by the court and the legal basis for its decision.

At trial, the Bank moved for nonsuit after several of its objections to evidence on the issue of bad faith were sustained. The trial court, treating the motion as one for judgment on the pleadings, dismissed the negligence and bad faith claims. Judgment on the pleadings for failure to state a cause of action may be made at trial without earlier notice (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]; *Macbeth* v. *West Coast Packing Corp.* (1947) 83 Cal.App.2d 96, 99 [187 Cal.Rptr. 815]). No formal motion by the parties need be made; the court may dismiss claims on its own motion or upon an objection to proffered evidence (*Bradley Co.* v. *Ridgeway* (1936) 14 Cal.App.2d 326, 329 [58 P.2d 194]; *Miller* v. *McLaglen* (1947) 82 Cal.App.2d 219, 223 [186 P.2d 48]). The procedure followed by the trial court was proper.

■ As to the legal basis for the court's decision, a motion for judgment on the pleadings must be granted where no cause of action exists in the context of the facts as pleaded (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 161, p. 2816). If the complaint could be amended to state a cause of action, leave should be granted to

allow plaintiff to do so (*MacIsaac* v. *Pozzo* (1945) 26 Cal.2d 809, 815 [161 P.2d 449]). ■ Even assuming the truth of all material allegations and noting the Wagners need only show they are entitled to some relief (*Alcorn* v. *Anbro Engineering Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]), the Wagners cannot state a cause of action in either negligence or bad faith. The trial court acted properly in dismissing these claims, as we shall now point out.

■ In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement (*Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 771 [128 P.2d 665]). Such a covenant has been implied in the contractual relationship between a borrower and lender (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 783 [157 Cal.Rptr. 392, 598 P.2d 45]; *Cherry* v. *Home Sav. & Loan Assn.* (1969) 276 Cal.App.2d 574, 579 [81 Cal.Rptr. 135], overruled on other grounds in *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629, 640 [116 Cal.Rptr. 633, 526 P.2d 1169]; *Schoolcraft* v. *Ross* (1978) 81 Cal.App.3d 75, 77 [146 Cal.Rptr. 57]; *Milstein* v. *Security Pac. Nat. Bank* (1972) 27 Cal.App.3d 482, 486 [103 Cal.Rptr. 16]). The covenant imposes upon each of the contracting parties the affirmative duty to do "everything the contract presupposes they will do to accomplish its purpose" (*Milstein* v. *Security Pac. Nat. Bank, supra,* 27 Cal.App.3d 482, 486). A breach of this duty may be a tort as well as a breach of the underlying contract (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575 [108 Cal.Rptr. 480]). However, not every breach of the covenant of good faith and fair dealing creates liability in tort. A bad faith cause of action sounding in tort has never been extended to contractual relationships other than in the insurance field (see *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 135, fn. 8 [135 Cal.Rptr. 802]). This does not mean such claims are limited only to insurance transactions. Modern tort law is not confined to causes of action recognized by legal precedent (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 10, p. 2310).

■ By analogy to the insurance cases, the Wagners suggest the Bank has acted in bad faith by withholding information about the management of their investment by MSR (*Davy* v. *Public National Ins. Co.* (1960) 181 Cal.App.2d 387, 396 [5 Cal.Rptr. 488] [duty of insurer to disclose information necessary for the protection of an insured's separate interests]). The duty to disclose this information should be imposed

independently and in addition to the contractual obligation to make available the proceeds of the loan (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 578). The violation of the duty would be a tort.

Assuming, but not deciding, a bad faith cause of action may arise from a borrower-lender relationship, the Bank's conduct is not tortious. The law of torts is concerned with the compensation of individuals who have sustained injury as a result of the unreasonable conduct of another. Since tort liability is ultimately imposed to achieve a desirable social climate, "public policy" plays a major role in determining the standard of conduct required by a particular factual situation (Prosser, Torts (4th ed. 1971) § 3, pp. 15-16). For example, social standards of fair dealing define reasonable conduct on the part of insurers in bad faith cases as consistent with public expectations of the insurance business. (See *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 668, fn. 5 [79 Cal.Rptr. 106, 456 P.2d 674]).

Here the Bank's practices do not violate social standards of fair dealing. Public policy does not impose upon the Bank absolute liability for the hardships which may befall the business venture it finances (*Fox & Carskadon Financial Corp.* v. *San Francisco Fed. Sav. & Loan Assn.* (1975) 52 Cal.App.3d 484, 489 [125 Cal.Rptr. 549]). The imposition of a duty to disclose management information would dramatically alter the risk undertaken by the Bank in the loan agreement. It should be kept in mind that the covenant of good faith and fair dealing imposes a duty to protect only the benefits of the agreement (*Universal Sales Corp.* v. *Cal. etc. Mfg. Co., supra,* 20 Cal.2d 751, 771). While this duty exists in addition to any contractual obligation, the nature and extent of the requirements of fair dealing are determined by the agreement itself (*Austero* v. *National Cas. Co.* (1978) 84 Cal.App.3d 1, 27 [148 Cal.Rptr. 653]).

The success of the Wagners' investment is not a benefit of the loan agreement which the Bank is under a duty to protect (*Kinner* v. *World Sav. & Loan Assn.* (1976) 57 Cal.App.3d 724, 734 [129 Cal.Rptr. 400]). The ultimate use to which the loan proceeds are put is only secondarily related to the immediate purpose of the contract. At most, the Wagners' investment interests must be given reasonable consideration by the Bank in charting its conduct (*Davy* v. *Public National Ins. Co., supra,* 181 Cal.App.2d 387, 395; *Austero* v. *National Cas. Co., supra,* 84 Cal.App.3d 1, 32). However, a contracting party is not required to totally disregard its own interests to show good faith (*Austero* v. *Na-*

*tional Cas. Co., supra,* 84 Cal.App.3d 1, 30). In this case the Bank has a substantial interest in the security of the loan. The facts here do not give rise to a duty for the bank to disclose any information it may have had; no claim of bad faith can be stated against the Bank.

As to the negligence claim, the Wagners allege they suffered substantial forseeable harm from the Bank's negligence in loaning money to them, as inexperienced investors, for a risky venture over which the Bank exercised influence and control. However, the Bank owes no duty of care to the Wagners in approving their loan. Liability to a borrower for negligence arises only when the lender "actively participates" in the financed enterprise "beyond the domain of the usual money lender" (*Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 864 [73 Cal.Rptr. 369, 447 P.2d 609, 39A.L.R.3d 224]; *Bradler* v. *Craig* (1969) 274 Cal.App.2d 466, 476 [79 Cal.Rptr. 401]; *Kinner* v. *World Sav. & Loan Assn., supra,* 57 Cal.App.3d 724, 734). Normal supervision of the enterprise by the lender for the protection of its security interest in loan collateral is not "active participation" (*Meyers* v. *Guarantee Sav. & Loan Assn.* (1978) 79 Cal.App.3d 307, 312 [144 Cal.Rptr. 616]; *Bradler* v. *Craig, supra,* 274 Cal.App.2d 466, 475-476). The Bank's limited involvement in the MSR enterprise falls far short of the extensive control and shared profits which give rise to liability (*Connor* v. *Great Western Sav. & Loan Assn., supra,* 69 Cal.2d 850, 864). Summary disposition of the Wagners' claim was proper (see *Bradler* v. *Craig, supra,* 274 Cal.App.2d 466, 476; *Kinner* v. *World Sav. & Loan Assn., supra,* 57 Cal.App.3d 724, 734).

At the conclusion of trial the court instructed the jury on the law relating to the agency relationship between the Wagners and MSR. Generally, all knowledge which an agent in good faith ought to communicate to his principal will be imputed to the principal as against innocent third parties (Civ. Code, § 2332). An exception exists, however, where the third party is "'acquainted with circumstances plainly indicating that the agent will not advise his principal'" (*Sands* v. *Eagle Oil & Refining Co.* (1948) 83 Cal.App.2d 312, 319 [188 P.2d 782], citing *Mutual Life Ins. Co.* v. *Hilton-Green* (1916) 241 U.S. 613, 622 [60 L.Ed. 1202, 1211, 36 S.Ct. 676]). The Wagners contend the trial court improperly rejected their proposed instruction stating this exception. However, there is no evidence on the record which "plainly indicates" MSR has withheld information. The Wagners have no right for the jury to be instructed on law applicable to theories which are not supported

by the evidence (*Fish* v. *Los Angeles Dodgers Baseball Club* (1976) 56 Cal.App.3d 620, 633 [128 Cal.Rptr. 807, 91 A.L.R.3d 1]).

■ The Wagners also contend the trial court improperly admitted evidence of their past investments. All relevant evidence is admissible at trial (Evid. Code, § 351); "relevant evidence" being any evidence having a tendency in reason to prove a disputed element of the cause of action (Evid. Code, § 210). The plaintiffs' reasonable reliance on the alleged misrepresentation is an essential element of fraud (*Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]). At trial, reliance may be demonstrated to be unreasonable in light of plaintiffs' intelligence and experience (*Furst* v. *Scharer* (1953) 119 Cal.App.2d 605, 609 [260 P.2d 198]). Evidence of the Wagners' past business ventures is relevant on this issue and was properly admitted by the trial court.

■ Similarly, the Wagners' assertion the trial court erred in excluding evidence relevant to the allegations of fraud and deceit is without merit. The trial court is vested with the discretion to exclude evidence which may unduly consume time or confuse the jury (Evid. Code, § 352). The exhibits sought to be introduced by the Wagners are of marginal probative value, tending to show the Bank's awareness of the risks involved in the MSR scheme. The Wagners' proposed evidence on this point could have easily overwhelmed and confused the jury, obscuring the more immediate question of whether the alleged misrepresentation was ever made. On review, the exercise of the trial court's discretion to exclude otherwise admissible documentary evidence because it may confuse the jury will not be disturbed absent a clear showing of abuse (*Huber, Hunt & Nichols Inc.* v. *Moore* (1977) 67 Cal.App.3d 278, 295, 296 [136 Cal.Rptr. 603]). Exclusion of the evidence here was permissible.

■ Finally, the Bank has cross-appealed, contending the trial court erred in apportioning its award of attorney's fees. Generally each party to a lawsuit is responsible for its own attorney's fees (*Bauguess* v. *Paine*, 22 Cal.3d 626, 634 [150 Cal.Rptr. 461, 586 P.2d 942]). However, an express agreement between the parties to allocate legal costs resulting from a contract dispute will be given effect by the courts (Code Civ. Proc., § 1021; *Nevin* v. *Salk* (1975) 45 Cal.App.3d 331, 338 [119 Cal.Rptr. 370]).

Here the parties have agreed to compensate the prevailing party for reasonable costs incurred in collecting the balance due on the notes. However, the Bank's collection efforts were interrelated with its defense against the Wagners' fraud allegations. Defense of the charge of fraud was necessary in the Bank's efforts to collect the notes (see *Nevin* v. *Salk, supra*, 45 Cal.App.3d 331, 340; *Shannon* v. *Northern Counties Title Ins. Co.* (1969) 270 Cal.App.2d 686, 690 [76 Cal.Rptr. 7]). The Wagners claimed the right to collect attorney's fees on the theory the enforceability of the notes had been placed at issue in their action against the Bank. Had they prevailed, the Wagners would have been entitled to such an award (Civ. Code, § 1717). Attorney's fees incurred by the Bank in defending against the fraud action are compensable under the attorney fees provision of the promissory notes (*Nevin* v. *Salk, supra*, 45 Cal.App.3d 331, 340; *Hayward* v. *Widmann* (1933), 133 Cal. App. 184, 190 [23 P.2d 762]). The trial court erred in apportioning its award of legal fees between the defense and collection aspects of the Bank's case. The Bank is entitled to the *reasonable* expenses incurred in the suit, during trial and on appeal (*Buescher* v. *Lastar* (1976) 61 Cal. App.3d 73, 76 [132 Cal.Rptr. 124]). The reasonable value of the professional services rendered is best determined by the trial court (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 44 [141 Cal.Rptr. 315, 569 P.2d 1303]).

The judgment is reversed as to the award of the Bank's attorney's fees only and that issue, including attorney's fees on appeal, is remanded for determination by the trial court. In all other respects the judgment is affirmed. The Bank is awarded costs on appeal.

Cologne, J., and Staniforth, J., concurred.

A petition for a rehearing was denied January 30, 1980, and the petition of plaintiffs and appellants for a hearing by the Supreme Court was denied March 13, 1980.