[Civ. No. 52. Fifth Dist. Mar. 1, 1962.]

ALBERT E. GUDEL et al., Plaintiffs and Appellants, v. BURTON F. ELLIS et al., Defendants and Respondents.

Mayes & Ellery and Don C. Mayes for Plaintiffs and Appellants.

Livingston & Borregard, Lawrence Livingston, Leo E. Borregard, Paul C. Maier, L. A. MacNicol and Isabella Grant for Defendants and Respondents.

CONLEY, P. J.—The appellants, Albert E. Gudel and Elsie L. Gudel, his wife, are dissatisfied with the judgment of the superior court which refuses to interfere with a sale of real property under a trust deed and ascertains the sums of money to be paid by the trustee to the several parties involved. Actually, the issues are quite simple when the extensive transcript and the lengthy briefs of the litigants are effectively penetrated. The briefs are extremely belligerent, and much good time and space are employed in casting charges and insinuations at the opposing sides; these efforts could have been much better spent in getting down to the few essentials involved in the litigation. Appellate briefs should generate light and not heat.

The appellants have moved this court to strike the first 134 pages of the reporter's transcript on the ground that they

deal with preliminary matters antecedent to the trial itself which were heard by another judge. An examination of this part of the record shows that all of the questioned pages, except two, involve proceedings relative to the preliminary injunction. These hearings eventuated in orders with respect to the injunction which could have been appealed separately. (Code Civ. Proc., § 963, subd. 2.) The two pages referred to deal with an order which was not itself appealable, namely, an order authorizing the expenditure by respondents of reasonable sums to protect their security.

■ Normally, the reporter's transcript on appeal should not contain any of these matters. The Rules on Appeal contemplate the inclusion in the reporter's transcript of the oral proceedings at the trial itself, any instructions given and any instructions requested but refused, also depositions or portions thereof received in evidence or offered and rejected. (Rules on Appeal, rule 4(a) ; 4 Cal.Jur.2d, Appeal and Error, § 335, pp. 90-91, § 336, p. 91.) However, there are certain preliminary matters which, though leading to orders not in themselves appealable, may be reviewed upon the appeal from a judgment, and we do not hold that such preliminary matters, if an official court reporter has been present and reported them, cannot in special cases be incorporated in the reporter's transcript.

The motion to strike these portions of the reporter's transcript is resisted, partly on the ground that appellant did not seek the relief in the superior court afforded by rule 8 of the Rules on Appeal. The appellants, or the respondents, if not satisfied with the transcript as originally prepared, should file a request for correction in the lower court, and that court should then see to it that the transcript is in proper form. This was not done by appellants, and respondents argue that they are therefore estopped from making the present motion. Another ground of alleged estoppel consists in the fact that, at least in one instance, appellants' attorney referred in his briefs to a portion of the reporter's transcript which he now seeks to eliminate.

■ In proper circumstances, this court does have an inherent discretionary right to insist that the record conform with the rules of court. In the instant case, we exercise our discretion by denying the motion. But in view of the fact that these pages of the transcript were not reasonably material to the determination of the appeal, we impose costs for the preparation of the duplicate copies of the transcript upon the

respondents (rule 26(a) of the Rules on Appeal); in this connection, it is ordered that upon the going down of the remittitur and the filing of a cost bill therefor the appellants shall recover from respondents any amounts expended by them for the preparation of the first 134 pages of the reporter's transcript.

This case involves the enforcement of a trust deed. The respondent Burton F. Ellis, an attorney and Army Colonel, and his wife, Dee H. Ellis, owned a ranch in Merced County. In 1951 they sold it to appellants Albert and Elsie Gudel for $42,500; $12,000 of this sum was paid down, and the balance, evidenced by a note secured by the trust deed, was payable in four installments of $2,500 each, on the first day of November, 1952, and the three succeeding years; the final installment of $20,500 was due on November 1, 1956. The Gudels made only two of the annual payments of $2,500; on November 1, 1956, they owed $25,500 principal and $1,000 interest, and they executed a note payable on November 1, 1958, for $26,500, secured by a new deed of trust on the ranch.

In January of 1958 the plaintiffs resold the ranch, together with certain personal property, to Hilbert E. Wolff and Josephine Wolff, his wife, for the total contract price of $68,500; as part of the purchase price of the land the Wolffs assumed the obligation to pay Ellis the $26,500 balance due under the note secured by the first deed of trust and signed a note secured by a second deed of trust to the Gudels for $32,000.

Incidentally, the Gudels received $10,000 down from the Wolffs at the time of the execution of the second trust deed, $7,000 of which was the price of certain personal property.

No payment whatsoever was made to the Ellises on the $26,500 note, and on November 3, 1958, they executed the usual notice of breach and election to sell, the Security Title Insurance Company being trustee under the first deed of trust; a notice of default was recorded by the trustee, and the 90-day period provided by law expired on February 3, 1959; a notice of trustee's sale was then published, the sale being set for March 6, 1959.

On that date, and immediately prior to the time set for the sale, the Ellises and the trustee were served with an order restraining the sale which had issued out of the United States District Court in Fresno in aid of a petition filed by the Gudels by which they sought relief under chapter XII of the Bankruptcy Act. After a hearing in Fresno on March 14, 1959, the referee in bankruptcy made an order dated March

31, 1959, vacating the restraining order and dismissing the proceedings for lack of jurisdiction. During the life of the restraining order the sale was postponed several times, the last postponement prior to March 31 setting the new date of the sale for April 3.

On April 2, 1959, appellants commenced the instant action against respondents. The complaint prayed for a temporary restraining order and a preliminary injunction against a trustee's sale pending a determination of the amount due under the Ellis note and deed of trust, and the temporary restraining order was issued. The complaint named Hilbert E. Wolff, Josephine Wolff, Burton F. Ellis, Dee H. Ellis, and the Security Title Insurance Company as defendants, and alleged that plaintiffs were the equitable owners of the 110-acre ranch here involved; that plaintiffs purchased the property from the Ellises and sold it to defendants Wolff; that the Wolffs executed the second deed of trust for $32,000 and that they were in default; that under the second trust deed if the Wolffs failed to make certain payments and perform certain other acts plaintiffs were authorized to take immediate possession of the land without notice in order that plaintiffs could protect their security; that on or about May 15, 1958, the Wolffs defaulted in their performance of the said contract and were presently in default, including a failure to pay the sum of $26,500, plus interest, to the defendants Ellis; that the defendants Wolff and Ellis conspired to deprive the plaintiffs of their rights in and to the real property involved, and that they proceeded to seek a trustee's sale of the property to deprive the plaintiffs of their rights, including the right to take possession of the land and to have the rents, issues and profits thereof. The prayer asks that the court determine the amounts which the defendants Ellis are lawfully entitled to receive on the first trust deed, that plaintiffs be given immediate possession of the property, that the court require defendants to appear and show cause why they and their agents should not be enjoined from proceeding with the sale of the property, and pending such hearing, that they be restrained from proceeding with any such sale until such time as the court has determined the amounts due defendants Ellis under their trust deed; also, that a receiver be appointed by the court to take possession of and operate the farm property involved, for costs of suit and such other relief as the court may deem just.

On April 13, the court heard the order to show cause why a preliminary injunction should not issue. The respondents Ellis had filed an answer to the complaint on that date. Mr. Gudel disputed the items for travel amounting to a total of $582.58, which Ellis had previously requested the trustee to obtain for him at the sale; respondents introduced an affidavit showing the amount claimed as of April 13, and this affidavit does not include the travel items. At about the same time, Colonel Ellis delivered to the trustee a statement which also did not include claims for travel. The court issued the preliminary injunction, restraining the trustee's sale pending a determination on the merits of the amounts due Ellis or until further order of the court.

On May 1, 1959, the Ellises petitioned for an order authorizing the expenditure of funds necessary to protect their security on the ground that the ranch needed care. The affidavit of Colonel Ellis in support of this petition showed the expenses incurred as of April 27 under the deed of trust for the protection of the security. This petition was heard by the court on May 11, and at that time appellants, through their counsel, concurred in the general statement that the property needed care. The court's order permitted Colonel Ellis to expend such reasonable sums as might appear necessary for the protection of the security and specifically permitted him to hire Wolff for that purpose, or any other person selected by him to do the work. Of course, at that time Wolff was the trustor of the Gudel second deed of trust and was then technically the owner of the property by reason of the deed previously given him by Gudel. He was living on the ranch and stated that he intended to stay there as long as he could.

On June 1, 1959, defendants Ellis filed a notice of motion to set aside the preliminary injunction, and after hearings thereon held June 8, 10 and 17, the superior court judge presiding set aside the injunction. While it is a cause for wonder why this was done prior to a determination in the suit as to the exact sums due to the Ellises under the trust deed, no appeal was taken from the order.

The time of termination of the preliminary injunction, by the court order, was 11 a. m. on June 18, and the ranch was then put up for sale by the trustee. The appellants Gudel bid up to the sum of $32,700. Ellis bid a higher sum, and ultimately Don Mayes, the attorney for the Gudels, stating explicitly that he was acting for himself and not for his clients, bid the sum of $40,000. Respondents Ellis thereupon

purchased the property for $40,005. A statement filed by the Ellises with the trustee on the morning of June 18 showed a total of $32,116 due them as follows: $26,500, principal; $2,657.39, interest; and $2,958.61, expenses for the protection of the security. The trustee's charges were $626.20. The respondents turned over to the trustee at that time a cash fund amounting to the difference between the amount of their bid and the amount of their credit, or $7,262.80. At the trial respondents introduced evidence of additional expenses which had been incurred subsequent to the sale. These were six items of cost aggregating $23.11 and an item of attorney's fees for defending the action amounting to $1,500.

The findings of fact and conclusions of law, in addition to a recapitulation of the basic elements above mentioned, include the following significant items: that there was never any tender by the plaintiffs to the Ellises of any sum whatsoever to cure plaintiffs' admitted default, even on the date of the trustee's sale on June 18, 1959; that Mr. Mayes, who bid $40,000 for the land, was acting as a principal and for himself; that the schedule of expenses consisting of exhibit C attached to defendants' consolidated pleadings and the summary at the end of that schedule setting forth the details of the monies sought to be recovered by the Ellises were and are true and correct; that said sums are reasonable in amount and were necessarily and properly expended or incurred by the defendants in the protection of their security, except that the item of $500 for attorney's fees in defense of the bankruptcy proceeding was modified to $250, and the item for a premium on the insurance policy was modified to the extent that the total premium should be $37.57, together with interest in the sum of $1.01; that any benefit to the corpus of the property in excess of the amounts necessary to preserve the security which inured to the land as a result of the expenditures made by the beneficiary was offset by the higher price obtained for the property at the sale; that Ellis obtained no rent and had no beneficial use of the property between January 18, 1959, and June 18, 1959; that defendants did not intentionally or without cause interfere with any right or title of plaintiffs in the property; that reasonable attorney's fees were $1,500 in the suit itself and $250 in the bankruptcy proceedings; that the foreclosure procedure was pursued correctly and in all respects properly; that defendants did only that which they had a full right to do under the provisions of the deed of trust; and that plaintiffs were not acting in good

faith in bringing this action, or in objecting to the expenses claimed by defendants. The judgment from which the appeal is taken provides as follows: (1) that plaintiffs are denied any relief; (2) that the defendants Ellis have judgment against plaintiffs for the principal of $26,500, interest in the amount of $2,657.39, attorney's fees in the amount of $1,750 and the sum of $2,433.34 as and for expenses incurred or expended by defendants in connection with the protection of their security; (3) that the trustee is directed to disburse the sums on deposit as follows: the sum of $6,038.07 to Mr. Gudel; the sum of $626.20 to the trustee for its fees; and the balance of the monies deposited by Mr. Ellis with the trustee or $598.53 to him.

The normal and usual inquiry in a case of this kind is whether or not the judgment is supported by substantial evidence. The answer is unquestionably "yes." Although it was claimed originally and throughout the litigation by the plaintiffs that there was a conspiracy on the part of the Ellises and the Wolffs to place the Gudels in a trap so that they could not exercise rights which they possessed, the evidence, in the opinion of the trial court, entirely failed to substantiate such a claim, and we are bound by the trial court's findings; it cannot be said, from an examination of the whole record, that plaintiffs adduced any substantial evidence which would compel a contrary conclusion.

With respect to the question of the expenses paid out by the Ellises, for which restitution is given by the terms of the judgment, again, we are in no position to quarrel with the findings of the court, in view of the fact that there is substantial evidence to support its viewpoint.

The trust deed executed by Mr. and Mrs. Gudel contained stringent provisions for the protection of the Ellises, which were not out of line with the usual provisions in similar documents. This security instrument contains the following agreements, among others, on the part of the trustor:

(1) To keep the property in good condition and repair and pay the costs thereof and ". . . to cultivate, irrigate, fertilize, fumigate, prune, and do all other acts which the character and use of said property may require to preserve this security";

(2) To take out fire insurance on the property and to maintain it;

(3) "To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or

powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear'';

(4) To pay taxes at least 10 days before delinquency. ''Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; . . .'' The Trustor shall pay ''. . . immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at seven per cent per annum.''

 All of the items allowed by the trial court, including the attorney's fees, fall within one or more of the subparagraphs of the express provisions of the trust deed. While there is conflicting evidence as to the reasonable value of some of them, we are not authorized on an appeal in a case of this kind to differ from the trial judge, inasmuch as he had substantial evidence upon which to base his findings.

As the foregoing observations effectively dispose of the appeal, many of the contentions made by the appellants constitute waste effort. We shall consider some of them, however, in brief fashion. One of the groups of objections turns on the fact that the pleadings in the case were amended from time to time and that finally both sides, at the end of the case and by mutual consent, filed consolidations of their pleadings, stating that they were amendments to conform to proof. The appellants complain bitterly now of the fact that in their opinion there was a shift of the claim with respect to allowable expenses from a purely tort theory to a contract theory by way of cross-complaint. We do not believe that there has been a departure from the essential questions posed by the original complaint and the original pleadings in this matter. As we have already pointed out, the two basic claims made in the original complaint were: (1) that there was a conspiracy between Ellis and Wolff to deprive the plaintiffs of their rights; and (2) that there were claims made by the Ellises for various items of expense that they were not entitled to. These two elements were what the court dealt with in the final decision of the case, and although some of the claims

were rejected or reduced in amount, the decision of the court was that the plaintiffs were not entitled to prevail on either of the main grounds urged by them in the suit.

This observation effectively disposes of the next group of contentions made by the appellants, namely, that the respondents were not entitled to attorney's fees because they were unsuccessful in the suit; this assertion is based on the fact that the expenses claimed by the respondents were somewhat cut down in the final holding of the court, but we must consider the total result as compared with the prayer in the original complaint to see whether the plaintiffs won or lost the case. No one viewing the matter fairly can escape the conclusion that the defendants and not the plaintiffs won. Therefore, attorney's fees were properly awarded under the provisions of the trust deed hereinbefore referred to. However, respondents' request for an allowance of additional attorney's fees on the appeal is denied.

A third class of objections is that because Mr. Ellis entered the real property for the purpose of preserving his security he must be accountable for rents and profits. Aside from his assertion that he never gained possession in any complete sense because of Wolff's occupancy under the second trust deed, the findings of the court are that no rents, issues or profits were actually received, and in the circumstances developed by the evidence, it would seem that the trial judge was justified in holding that the Ellises were not accountable.

The notice of appeal originally filed in the office of the County Clerk of the County of Merced on the 12th day of September, 1960, stated that the plaintiffs appealed from the judgment ". . . and also from the order denying plaintiff's motion for a new trial, made and entered in the minutes of said court the 31st day of August, 1960."

Plaintiffs later filed what they denominated an "Amended Notice of Appeal and Notice to Clerk That a Transcript on Appeal Be Made" and in that document, in addition to a statement that they appealed from the judgment, they added a purported appeal ". . . from the order of the Court made after trial permitting defendants to cross complain for relief not demanded at time of trial, filed April 12 and April 25, 1960; and from the Order Denying Motion to Move for New Trial dated 31 August 1960." Passing over the question whether the filing of the original notice of appeal did not deprive the trial court of jurisdiction to entertain an amended notice of appeal (Code Civ. Proc., § 946), we note that there

is no right to appeal from an order made before judgment permitting the filing of a cross-complaint and no right to appeal from an order denying a motion for a new trial in a civil case. (*Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907].) Any error in either ruling may be reviewed on an appeal from the judgment.

█ The motion for a new trial was denied on the ground that no memorandum of authorities was filed by the plaintiffs as required by rule 3(b) of the Superior Court Rules. That rule provides: "A party seeking a new trial in a civil case shall, within ten (10) days after filing notice of intention to move therefor, serve and file a memorandum of points and authorities relied upon, and within ten (10) days thereafter, the adverse party may serve and file a corresponding memorandum in reply thereto. Except for good cause shown, the failure of the moving party to serve and file the prescribed memorandum shall be grounds for denial of the motion without a hearing on the merits." The trial judge applied this rule in all of its stringency; as he was acting in strict accordance with a specific rule of court, we must uphold his action in the matter.

The purported appeals from the order permitting the filing of a cross-complaint and from the order denying the motion for a new trial are dismissed. The judgment is affirmed, and costs are awarded respondents with the exception hereinabove noted, namely, that costs are awarded to the appellants insofar as they relate to the preparation of pages 1 to 134, inclusive, of the reporter's transcript, the appellants to file a cost bill for that item in the court below as a condition precedent to judgment therefor.

Brown, J., and Stone, J., concurred.

A petition for a rehearing was denied March 26, 1962, and appellants' petition for a hearing by the Supreme Court was denied April 25, 1962.