Filed 4/27/15; pub. order 5/21/15 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO DIAZ-BARBA et al., | D066462 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. 37-2009-00083805-CU-BT-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| WOLFGANG HAHN et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Joel M. Pressman, Judge. Petition denied; stay vacated.

Niddrie, Fish & Addams and David A. Niddrie for Petitioners.

No appearance by Respondent.

Cooley, Ali M.M. Mojdehi, Janet D. Gertz and Allison M. Rego for Real Parties in Interest.

In *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177 (*Hahn I*), this court affirmed an order, issued under the forum non conveniens doctrine, staying an action against residents of California for tortious interference with contract and related claims for the sale of an interest in a Mexican business. We determined that petitioners (hereafter defendants) met their burden of proving Mexico was a suitable alternative forum, based on their stipulations to submit to the jurisdiction of Mexican courts and waive applicable statutes of limitation, and on balance the private and public interests favored Mexico as the more convenient forum. (*Id.* at pp. 1192, 1198-1199.) The trial court retained the power to verify that real parties (hereafter plaintiffs) had a remedy in Mexico, and we acknowledged that "[i]f, for any reason plaintiffs cannot bring their action in Mexico, they may return to California and request that the court lift the stay." (*Id.* at p. 1192.)

In this petition, the issue is whether the court erred by granting plaintiffs' motion to lift the stay on the ground Mexican courts dismissed two separate suits they filed in that country, making it an unavailable alternate forum. Defendants contend the ruling is erroneous because the evidence shows plaintiffs did not prosecute their action in Mexico in good faith. Among other things, defendants claim they unreasonably delayed filing suit in Mexico and purposely drafted deficient complaints to ensure their rejection. Additionally, defendants contend the court prejudicially erred by denying their request to cross-examine the independent expert it appointed on Mexican law. We conclude defendants' contentions lack merit, and thus we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    *The Parties*

Plaintiffs are Wolfgang Hahn, a German citizen who resides in Switzerland and Mexico, and his company, Nikita II, S.A. (Nikita), a Luzembourg corporation. Nikita is the majority owner of Impulsora de Chamela, SA de CV (Impulsora), a Mexican company with property in Chamela, State of Jalisco, Mexico. Hahn intended to develop the property into an exclusive resort called La Tambora.

Defendants are Alejandro Diaz-Barba (Diaz); his mother, Martha Barba De La Torre (Barba); and their friends, brothers Michael Kocherga, Nicholas Kocherga and Alexander Kocherga (collectively, the Kochergas). Diaz and Barba are Mexican citizens who reside in San Diego County and do business here. Two of the Kochergas were born in Mexico and one of them was born in Spain. The Kochergas reside in San Diego County.[2]

B.    *Villa Vista Hermosa/Underlying Bankruptcy Proceeding*

In 2004, Diaz and Barba purchased property in Mexico called Villa Vista Hermosa, which is the childhood home of the Kochergas, along with a fourth brother,

---

[1]    For convenience, we take some facts from *Hahn I, supra,* 194 Cal.App.4th 1177.

[2]    *Hahn I, supra,* 194 Cal.App.4th at page 1195, notes: "While Diaz and Barba attempt to raise a dispute as to where they reside, the evidence is such that we presume they also reside in California."

Eugenio Kocherga, who is not a party to this litigation.[3] Eugenio Kocherga was a minority shareholder in Impulsora.

Villa Vista Hermosa had been owned by Jerry and Donna Icenhower, and during their bankruptcy proceeding they purported to transfer it to a sham company, Howell & Gardner Investors, Inc. (H&G), which sold it to Diaz and Barba. In 2005, the bankruptcy trustee added Diaz and Barba as defendants in a fraudulent conveyance action he had filed against the Icenhowers and H&G. Subsequently, a Hahn entity negotiated with the trustee to purchase the bankruptcy estate's assets, including an assignment of the fraudulent conveyance action. In 2008, the bankruptcy court found the Icenhowers' transfer of Villa Vista Hermosa to H&G was fraudulent, the property was an asset of the bankruptcy estate, and Diaz and Barba, who had knowledge of the bankruptcy proceeding, lacked good faith and exercised insufficient due diligence in their purchase. The court ordered Diaz and Barba to convey the property to the bankruptcy estate. (*Kismet Acquistion, LLC v. Icenhower (In re Icenhower)* (9th Cir. 2014) 757 F.3d 1044, 1047, 1049.)

C.      *Complaint Filed in San Diego County Superior Court*

In July 2009, plaintiffs filed a first amended complaint (complaint) against defendants for tortious interference with contract, and intentional and negligent interference with prospective economic advantage. The action arises from defendants'

---

3      When referring to Eugenio Kocherga, we use his first and last names to avoid confusion.

4

conduct during the pendency of the fraudulent conveyance action against Diaz and Barba in bankruptcy court.

The complaint alleges as follows: Hahn sought to purchase Eugenio Kocherga's minority interest in Impulsora to attract investors in La Tambora. In 2006, they began negotiations and, in 2007, they reached an agreement for the sale of his shares for $2.5 million. On February 6, 2007, the deal was memorialized in a letter agreement signed by Eugenio Kocherga. Defendants knew of the letter agreement.

Diaz and Barba pressured Hahn to dismiss them from the fraudulent conveyance action in the bankruptcy proceeding. Having no success, they enlisted the Kochergas to assist them, as they knew the Kochergas had a "deep emotional attachment" to Villa Vista Hermosa. Diaz and Barba promised the Kochergas an opportunity to purchase an interest in the property, contingent on their success in getting Hahn to dismiss them from the fraud action. After the letter agreement was signed, defendants influenced Eugenio Kocherga not to honor it. He reneged on the deal, after which he used his minority interest in Impulsora to harass Hahn and derail the La Tambora project.

The breach of the letter agreement forced plaintiffs to reevaluate La Tambora's feasibility because they lost financing. Plaintiffs had to put the project on hold, which caused a substantial increase in carrying costs and expenses, and deprived them of anticipated operating income and profits. Additionally, defendants' conduct harmed plaintiffs' business reputation and destroyed goodwill.

5

D.      *Forum Non Conveniens Motions/Hahn I*

Defendants brought and/or joined in motions for the dismissal or stay of the action on the ground of forum non conveniens. They stipulated to submit to the jurisdiction of the courts in Mexico, and to waive the applicable statute of limitations in Mexico. In support of their argument Mexico was the superior forum, they submitted declarations by three Mexican attorneys. Plaintiffs submitted no countervailing evidence.

The court granted the motions and issued an order staying the action, and in *Hahn I* we affirmed the ruling. (*Hahn I, supra,* 194 Cal.App.4th at p. 1199.) We determined that as a matter of law, Mexico was a suitable alternative forum, meaning it would have jurisdiction over defendants and an action would not be barred by the statute of limitations. (*Id.* at pp. 1190-1192.) We also determined the court did not abuse its discretion by finding that on balance, public and private interests favored litigation in Mexico. Among other reasons, we explained "all of the effect, harm, and damages caused by defendants' alleged conduct occurred in Mexico and would require proof through third party witnesses in Mexico." (*Id.* at p. 1196.) We explained that "by staying the action rather than dismissing it, the court retains the power to verify both that the Mexico courts accept jurisdiction of the action and that defendants abide by their stipulations. If, for any reason plaintiffs cannot bring their action in Mexico, they may return to California and request that the court lift the stay." (*Id.* at p. 1192.)

E.      *First Motion to Lift Stay*

*Hahn I, supra,* 194 Cal.App.4th 1177, was filed on April 29, 2011. In March 2012, plaintiffs moved to lift the stay based on defendants' conduct. By this time, a new

6

judge was handling the matter. Plaintiffs argued Diaz and Barba had irreparably chilled their "ability to receive a fair trial in Mexico in connection with this action, due to their acts of intimidation of witnesses and harassment of [p]laintiffs' Mexican civil counsel through various improper means, including . . . gross misuse of criminal process against such persons in Mexico."

Plaintiffs advised the court that Diaz and Barba had filed two criminal actions, and Eugenio Kocherga had filed a third criminal action, against Hahn and related persons and entities, which arose from the Icenhower bankruptcy and sought to collaterally attack the bankruptcy court's order for transfer of Villa Vista Hermosa. The first action was closed, but plaintiffs argued defendants had used the second and third actions "to make it more burdensome and difficult for [them] to bring this action in Mexico." Plaintiffs claimed that ordinarily, under Mexican criminal procedure, "no arrest warrant may be issued unless and until the accused has the right to be heard," but "the judge issued warrants for . . . Hahn's and the other accused['s] arrests in connection with the [t]hird [c]riminal [p]roceeding."

Plaintiffs also advised that one of their attorneys in Guadalajara received a call from Marco Antonio Del Toro Carazo (Del Toro), an attorney for Diaz, Barba, and Eugenio Kocherga in the criminal actions. Del Toro requested a meeting, during which he "used the threat of execution of [arrest] warrants to attempt to force concessions from . . . Hahn." Del Toro said Hahn, his attorneys, and others would be arrested unless Hahn agreed to dismiss this action; pay Eugenio Kocherga for his shares in Impulsora; pay sanctions of approximately $2 million, which were awarded against Diaz and Barba

7

for their contempt of the bankruptcy court; and transfer Villa Vista Hermosa to Diaz and Barba. The motion states: "Del Toro also threatened that, unless . . . Hahn conceded to [defendants'] demands, he would cause . . . Hahn to be referred by the Mexican authorities to Interpol for placement on a fugitive/criminal watch list, which would subject him to extradition to Mexico from virtually anywhere in the world and thereby restrict his ability to travel."

The motion also stated Hahn rejected defendants' demands, and as a result as of "January 2011 [Hahn] has been . . . subject to arrest in Mexico and is unable to travel because of concern[s] that he might be subject to extradition to Mexico . . . ." Further, "several of . . . Hahn's longstanding corporate counsel in Mexico City . . . are subject to arrest in Mexico and are currently living in exile," and potential witnesses in this action "are currently subject to arrest in Mexico."

In their opposition, defendants argued the court should not lift the stay because plaintiffs had not attempted to file their action in Mexico, in violation of *Hahn I*. Defendants claimed that under Mexican law, "parallel criminal proceedings are very common," and the existence of an arrest warrant against Hahn was not an impediment to plaintiffs pursuing their claims in Mexico.

In April 2012, the court denied plaintiffs' motion. The minute order states: "[T]he predicate act pursuant to *Hahn* [*I*] . . . is that plaintiffs must file their lawsuit in Mexico to determine if the Mexican system works. After plaintiffs perform the predicate act of filing their litigation in Mexico, this Court will be able to determine whether as a result of defendants['] conduct, including the bail and arrest warrants issued against plaintiffs, it is

8

impossible for plaintiffs [to] litigate their claims in Mexico. . . .  Until such time this Court finds that there has not been a sufficient predicate act to justify lifting the stay."  The court ordered that the stay "shall remain in place for one year from the date of the ruling, to April 20, 2013, until further order of the Court."

F.      *Complaints Filed in Mexico*

In March 2013, plaintiffs requested that the trial court take judicial notice of a dismissal order by a Mexican court.  On November 26, 2012, they filed "a *demanda en la via Ordinaria Mercantil* (Ordinary Commercial Action), in the Fourth District Court for Civil Affairs in the Federal District," which is located in Mexico City.

The complaint contains the following advisement:  "This Honorable Court is hereby advised that during February of 2009 the plaintiffs filed a complaint claiming fundamentally the same benefits and setting forth the same facts as set forth herein against the Defendants hereunder, such complaint was lodged before the Superior Court of the State of California, San Diego County, United States of America and was assigned case [No.] 37-2009-00083805-CU-BT-CTL, where, because of the argument that the interference by the Defendants is regarding the sale of shares issued by Impulsora . . . which is a Mexican corporation, that the Defendants (with one exception) declared to be Mexican nationals and further *declared to submit to the jurisdiction* and competence of Mexican Courts, Judge Joel M. Pressman ruled on April 13, 2012, . . . that the action should be carried out in the Mexican United States, for such purposes this complaint is brought before Your Honor."  (Italics added.)

9

The Mexican court dismissed the action the following day, ruling "the applicability of ordinary commercial action is not valid, because the **principal benefit claimed is the payment of damages**, which is merely civil per its nature." The court advised that "the applicable legal action for claiming the benefits referenced in the complaint is **an ordinary civil action** . . . ."

In May 2013, plaintiffs asked the court to take judicial notice of a second dismissal order from a Mexican court. On December 10, 2012, plaintiffs filed a complaint "in the Civil Courts for Mexico City, Federal District. The complaint was turned, by random assignment, to the *Sexagesimo Tercero Juzgado de lo Civil del Distrito Federal* (the '63rd Civil Court'), as a *demanda en la via Ordinaria Civil Mediante Accion Personal* (Ordinary Civil Personal Action)." The ordinary civil action contained substantively the same advisement as the ordinary commercial action, pertaining to plaintiffs' action in San Diego County Superior Court and defendants' stipulations to submit to the jurisdiction of Mexican courts.

On December 12, that court dismissed the complaint for lack of territorial jurisdiction over defendants because their "addresses are in the State of California, United States of America . . . ." The order explains that under the "Federal District's Code of Civil Procedure," the "**proper Judge shall be . . . [t]he one for [d]efendant's domicile**." Further, the order notes there was no contract containing a venue selection clause.

G.    *Second Motion to Lift Stay*

Plaintiffs moved to lift the stay on the ground two Mexican courts "have independently ruled that Mexico is not an available forum." In opposition, defendants

10

argued plaintiffs did not prosecute their action in Mexico in good faith. Defendants characterized the complaints filed in Mexico as "manifestly deficient" and purposefully drafted to defeat jurisdiction in Mexico. They also complained that the Mexican courts erred by rejecting the complaints, and plaintiffs should have tried to amend them or seek review. Both sides presented supporting declarations from Mexican attorneys.

At a status conference in May 2013, "[t]o resolve the seemingly intractable conflict," the court decided to appoint a neutral expert on "Mexican law and procedure," with the parties covering the expense.[4] The court directed the parties to submit one or two names, and they agreed their submissions would be anonymous. The court enlisted retired Judge Vargas to assist it in picking an expert "by lot" after reviewing their resumes.

At a status conference in August 2013, the court selected Dr. Jose Ovalle Favela (Favela). He is a law professor with more than 40 years of experience, an author of texts pertaining to procedural law and other topics, and a litigator.

A hearing on plaintiffs' motion to lift the stay was held on December 13, 2013. Favela, who had not yet issued an opinion, appeared electronically. The parties presented the positions of their experts and oral argument. The court then advised the parties that Favela would file a report with the court, the court would provide copies to the parties, and they had the right to file a response of up to 10 pages, with no additional

---

4     Defendants submit that "[r]ather than cull through the parties' submission[s], the trial court appointed" an expert of its own. To the contrary, the court expressly stated it "considered all briefing and all expert declarations . . . in this case."

11

declarations, surreply or rebuttal allowed. After the parties responded, the court would render its ruling. No party objected to this procedure.

In April 2014, Favela provided his declaration, and the following month the parties filed their responses. In June 2014, the court issued an order granting plaintiffs' motion on the ground Mexico is not an available alternative forum per the declaration of Favela. Favela opined that both Mexican complaints were properly rejected, the court's procedures were free of irregularities, and any appeals would have been fruitless.

Favela's declaration states that under Mexican civil procedure, a judge must look at a complaint shortly after it is filed, and " 'may reject the complaint when he considers that it does not fulfill the legal requirements and that the defects are not repairable; for example, if the judge has no jurisdiction [citation], [or] if the claim has been filed by the inadequate proceeding.' " Further, the "judge issues his decision accepting, rejecting, or asking to clarify the complaint, without hearing the defendant, who will only be given notice of the decision[]."

As to the first Mexican complaint, Favela declared: "The Fourth Civil District Judge in Distrito Federal rejected the complaint considering that the ordinary commercial proceeding was not available to the plaintiff since the cause of action was of a civil nature. Since the plaintiff was claiming damages caused by an illicit act, the Judge considered that the complaint had to be filed through an ordinary civil proceeding. The proper kind of proceeding (*procedencia de la via procesal*) (ordinary civil procedure, commercial civil procedure, etc.) is an essential procedural requirement, that the Judge must analyze even if the defendant does not raise any objection. The filing of a

12

complaint through an improper proceeding is not repairable, therefore the Judge cannot ask the plaintiff to correct its claim . . . ." Plaintiffs could have appealed the judge's ruling, but a challenge "would not have been successful, since the decision . . . has solid reasons."

As to the second complaint filed in Mexico, Favela declared "jurisdiction . . . is an essential procedural requirement that the judge must analyze sua sponte, as soon as he receives the claim," and the "Judge rejected the complaint because he did not have jurisdiction over the defendants since none of them had their domicile within his territorial jurisdiction, and because there was not a contract with a clause in which the parties have designated a place for the interpretation of execution of their obligations." The court was not required to admit the complaint based on defendants' stipulations to submit to the jurisdiction of Mexican courts, because a unilateral stipulation is insufficient to confer jurisdiction.

A party may tacitly submit to the jurisdiction of Mexican courts by filing a complaint there, but "if a person files a complaint before a Mexican court forced by the decision of a foreign court, it is questionable that there really is a spontaneous submission to its jurisdiction." Favela advised that the judge's ruling could have been challenged, but "it is my opinion that the decision would have been upheld . . . given that its reasoning is according to the applicable law."

The court noted Favela's declaration "supports the opinion of plaintiffs' expert, Dr. Oscar Téllez-Ulloa [Téllez]." Téllez has practiced law in Mexico for more than 40 years, and he previously served as a member of the Mexican judiciary. He declared that

13

because plaintiffs' action sounded in tort, the ordinary commercial action was properly rejected. Further, the ordinary civil action was properly rejected because "none of the [d]efendants are domiciled in Mexico." For an ordinary civil action, "the only available basis for jurisdiction of the parties and subject matter of the complaint would be under CFPC [Federal Code of Civil Procedure] Article 24, section IV, that is, the *domicile* of each of the [d]efendants. In order to adjudicate the complaint in Mexico, each of the [d]efendants would need to be domiciled in Mexico." Téllez agreed that a party's unilateral stipulation to submit an existing dispute to the courts of Mexico is insufficient to confer territorial jurisdiction.[5]

Defendants petitioned for relief in mandate and requested a stay. We stayed the proceedings pending further order and requested that plaintiffs file an informal response. After finding good cause to do so, we filed an order to show cause why the relief requested should not be granted. Plaintiffs filed a return to the petition, and defendants filed a reply to the return.

---

[5] The court also found Favela's opinions comported with the actual view of defendants' expert, attorney Alfredo Andere-Mendiolea (Andere). In this action, Andere declared there was no territorial bar to litigating the civil action in Mexico given defendants' stipulations to submit to the jurisdiction of Mexican courts. His declaration states "a Mexico City Court CANNOT reject . . . territorial jurisdiction without first summoning the defendants to allow them to expressly or tacitly accept jurisdiction of the court by simply answering the complaint." However, plaintiffs here submitted evidence that in 2012, Andere took a different position in litigation in federal court in California in which he was a party. He submitted a declaration by a professor of Mexican civil procedure that stated the proper venue for the payment of a debt was the debtor's domicile, that rule was inflexible, and a "Mexican judge is obligated to review the issues of venue and jurisdiction before admitting a case, and generally will determine proper venue and jurisdiction at the outset of a case."

DISCUSSION

I

*Plaintiffs' Motion to Strike*

Plaintiffs have filed a "Motion to Strike Disrespectful, Scandalous, Abusive and Irrelevant Material in Petition for Writ of Mandate, Reply to Informal Response and Reply to Petition," accusing defendants of subterfuge.  Defendants have filed an opposition to the motion, accusing plaintiffs of subterfuge.  While we agree defendants' counsel is guilty of mud-slinging, we deny the motion as it detracts from our task. "Courts prefer to rest their decisions upon the merits of causes, rather than to spend time on matters collateral to questions on appeal." (*Estate of Green* (1955) 133 Cal.App.2d 451, 452.)  "[I]t will be better to consider the appeal on all of the briefs submitted, rather than to spend time determining what, if any, portions of briefs are or are not relevant, or should or should not be stricken out.  Irrelevant matters in briefs do not have any persuasive weight in determining an appeal." (*Ibid.*)

We do note that the "most persuasive briefs present temperate, well-reasoned arguments." (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2014) ¶ 9:29, p. 9-9.)  "Most appellate justices subscribe to the aphorism that 'appellate briefs should generate light and not heat.' " (*Ibid.*, citing *Gudel v. Ellis* (1962) 200 Cal.App.2d 849, 850.)

15

## II

### *Bases of Writ Relief/Standard of Review*

The parties disagree as to the nature of defendants' writ petition and the applicable standard of review. The petition is denominated a petition for writ of "Mandate/Prohibition." (Some capitalization omitted.) Plaintiffs contend a writ of prohibition is unavailable because it "arrests the proceedings of any tribunal . . . when such proceedings are without or in excess of the jurisdiction of such tribunal." (Code Civ. Proc., § 1102.) A writ of prohibition does not lie to prevent an abuse of discretion. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 287.)

Defendants contend a writ of prohibition is available, citing *Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982 (*Butler*), which explains: "When an appellate court's reversal is accompanied by *directions requiring specific proceedings on remand*, those directions are binding on the trial court and *must* be followed. Any material variance from the directions is unauthorized and void. [Citations.] When, for example, 'a cause is remanded with directions to enter a particular judgment, it is the duty of the trial court to enter judgment in conformity with the order of the appellate court, and that order is decisive of the character of the judgment to which the appellant is entitled." (*Ibid.*, italics added.)

In *Butler,* the appellate court reversed a judgment and directed the trial court to enter a new default judgment in accordance with evidence the plaintiff presented at a default prove-up hearing. Instead, the trial court granted the defendant's motion to vacate an order striking her answer to the complaint. The appellate court granted the plaintiff's

writ petition and ordered the trial court to comply with its previous direction. (*Butler, supra,* 104 Cal.App.4th at pp. 981-983; see *Karlsen v. Superior Court* (2006) 139 Cal.App.4th 1526, 1528-1531 [trial court violated appellate court's direction to issue statement of decision]; *Hampton v Superior Court* (1952) 38 Cal.2d 652, 654-656 [trial court violated appellate court's direction to enter judgment in specific manner].)

Defendants claim the trial court exceeded the authority we granted it in *Hahn I* and thus its order lifting the stay is void. Defendants rely on this language from *Hahn I,* which pertains to burdens of proof generally on a forum non conveniens motion: "If the plaintiffs produce *competent and persuasive evidence* showing that despite the defendants' stipulations the action cannot be brought in the alternative forum, it is then the defendants' burden to respond with countervailing evidence as they have the ultimate burden of persuasion." (*Hahn I, supra,* 194 Cal.App.4th 1177 at p. 1191, italics added.) That language does not constitute a specific direction to the trial court. In *Hahn I,* we merely acknowledged that "[i]f, for any reason plaintiffs cannot bring their action in Mexico, they may return to California and request that the court lift the stay." (*Id.* at p. 1192.) As defendants acknowledge, "Who better than this Court to determine the mandate of its prior opinion?"[6]

---

6    We also reject defendants' assertion that we used the term "competent and persuasive evidence" in *Hahn I, supra,* 194 Cal.App.4th at page 1191, because we "anticipated that [plaintiffs] might not cooperate with the foreign forum," and thus we intended to impose a "heightened burden of proof" on them should they move to lift the stay. The "competent and persuasive evidence" reference is unrelated to plaintiffs' conduct or motives, which we had no reason to question or address in *Hahn I*.

We conclude a writ of prohibition is not a proper vehicle, as the trial court unquestionably had *jurisdiction* to lift the stay if the evidence supported such a ruling. Since a writ of prohibition is unavailable, we consider defendants' petition one for mandamus alone. (*Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 715, fn. 6.) "Mandamus is issued 'to compel the performance of an act which the law specially enjoins . . . .' (Code Civ. Proc., § 1085.) Although mandamus does not generally lie to control the exercise of judicial discretion, the writ will issue 'where, under the facts, that discretion can be exercised in only one way.' " (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205; *State Farm etc. Ins. Co. v. Superior Court* (1956) 47 Cal.2d 428, 432 ["[m]andate lies to control judicial discretion when that discretion has been abused"].) " 'In a legal sense discretion is abused whenever in the exercise of its discretion the court *exceeds the bounds of reason*, all of the circumstances before it being considered.' " (*State Farm etc. Ins. Co.,* at p. 432, italics added.)

The "threshold issue of whether an alternative forum is suitable is nondiscretionary, subject to de novo review." (*Hahn I, supra,* 194 Cal.App.4th at p. 1187; *Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 131.) In *Hahn I*, we independently reviewed the matter and found suitability because defendants stipulated to jurisdiction in Mexico and to waive or toll any applicable statutes of limitation. (*Hahn I,* at p. 1187.) Here, however, there is no longer a threshold issue of suitability. Rather, defendants opposed plaintiffs' motion on the ground they did not pursue their action in Mexico in good faith. Defendants complain that plaintiffs unreasonably delayed in filing suit in Mexico, filed pleadings deliberately designed to ensure their rejection, failed to

18

amend their pleadings or seek an appeal, and refused to participate in a declaratory relief action defendants filed in Mexico.  A party's good faith " 'is generally a factual question, and the fact-finder's express or implicit determination will be upheld on appeal if supported by substantial evidence.' "  (*Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 539; *Placentia Fire Fighters v. City of Placentia* (1976) 57 Cal.App.3d 9, 25 ["The question of good or bad faith is primarily a factual determination based on the totality of the circumstances . . . ."].)[7]

III

*Analysis*

A

*Diligence*

Defendants devote one paragraph of their petition to the issue of plaintiffs' alleged lack of diligence in filing suit in Mexico.  They merely state plaintiffs "took little or no action to bring their action in Mexico for more than [one and one half] years (19 months)."  Defendants cite *Van Keulen v. Cathay Pacific Airways, Ltd.* (2008) 162 Cal.App.4th 122, 130, which explains:  "[W]hile California's policy *favors* trial on the merits, there comes a time when that policy is overridden by California's policy requiring

---

[7]    Defendants assert the good faith issue is an issue of law subject to our de novo review because it is based solely on pleadings.  They cite *County of Kern v. Jadwin* (2011) 197 Cal.App.4th 65, 72, which held that for purposes of sanctions under Code of Civil Procedure section 128.5, "subjective bad faith is not required where the action is objectively frivolous or the complaint is 'bereft of any objective factual support' and 'clearly has no chance of success.' "  Here, however, defendants' claim of bad faith was based on more than the allegations of plaintiffs' Mexican complaints.

dismissal for failure to prosecute with reasonable diligence. . . . If, by a California plaintiff's lack of reasonable diligence in prosecuting its action, California has lost its interest in providing an adequate forum, an action originally stayed on a forum non conveniens grounds may therefore be dismissed."

In their petition, defendants are not forthcoming with the critical facts. " 'A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, and *show how and why it is insufficient.*' " (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738; Cal. Rules of Court, rule 8.204.) "[A]n attack on the evidence without a fair statement of the evidence is entitled to no consideration . . . ." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

The petition ignores defendants' conduct in causing delay, by bringing criminal proceedings against Hahn, which was the entire subject of plaintiffs' first motion to lift the stay.[8] At the hearing on that motion, the court ordered that the stay remain in place until April 20, 2013, impliedly finding plaintiffs had not unreasonably delayed, and they had until then to file suit in Mexico, which they did. Under the circumstances, defendants have waived our consideration of the issue, and in any event, the court could reasonably find from the evidence that the timing of the Mexican complaints does not indicate bad faith.

---

[8]     Defendants address their criminal proceedings against Hahn only in their reply to plaintiffs' formal return to the petition.

20

B

*Complaint Allegations*

Additionally, defendants contend plaintiffs intentionally drafted the Mexican complaints to defeat that country's jurisdiction. "[A] long line of jurisprudence holds that a plaintiff whose case is dismissed for forum non conveniens must litigate in the foreign forum in good faith." (*Dardengo v. Honeywell Int'l, Inc. (In re Air Crash Over the Midatlantic)* (N.D.Cal. 2011) 792 F.Supp.2d 1090, 1095, italics omitted.) " ' "A party should not be allowed to assert the unavailability of an alternative forum when the unavailability is a product of its own purposeful conduct." ' " (*Id.* at p. 1094.) "A conditional forum non conveniens dismissal protects a plaintiff against the possibility that the foreign forum will not hear his case. It does not give the plaintiff license to deliberately prevent his suit in the foreign court from going forward in order to render an alternative forum defective." (*MBI Group, Inc. v. Credit Foncier du Cameroun* (D.C. Cir. 2010) 616 F.3d 568, 572.) "[T]he fact that plaintiffs generally have freedom to craft their complaints as they wish does not prevent dismissal because these [p]laintiffs are subject to a forum non conveniens Order and have engaged in pleading practices deliberately designed to defeat jurisdiction in the foreign forum and circumvent that Order." (*Dardengo,* at p. 1097, italics omitted.)

Defendants assert that plaintiffs "filed a materially different action omitting all of the allegations concerning alleged events occurring in Mexico − thereby eliminating any chance the Mexican courts would take the case." Defendants point out that the Mexican complaints each consisted of 17 paragraphs of facts and a few exhibits, whereas the

21

complaint filed in San Diego County Superior Court consists of 186 paragraphs of facts and numerous exhibits. Defendants cite the declaration of their expert, Andere, which states that in Mexico, a plaintiff is required to submit all available documentary evidence with a complaint. The declaration faults plaintiffs for not submitting pleadings and other records from the San Diego County Superior Court action and the federal bankruptcy action, along with a variety of other documents.

Most egregious, according to defendants, is plaintiffs' failure to attach to the Mexican complaints a copy of this court's opinion in *Hahn I* and copies of defendants' stipulations to submit to the jurisdiction of the Mexican courts. Defendants insinuate that plaintiffs hid the forum non conveniens ruling and their stipulations from the courts there, but that is untrue. Both complaints filed in Mexico prominently advised that in February 2009, plaintiffs filed an action for the same claims in San Diego County Superior Court, defendants all stipulated to subject themselves to the jurisdiction of the Mexican courts and, in April 2012, Judge Pressman ruled that the action should be litigated in Mexico.

Further, defendants show no nexus between the omission of allegations pertaining to wrongdoing in Mexico, or the lack of additional exhibits, and the Mexican courts' rejection of the complaints. The ordinary commercial action was rejected because plaintiffs' claims sound in tort, and the ordinary civil action was rejected because of a lack of territorial jurisdiction since defendants are domiciled in California.

We have set forth Favela's opinions at length in the factual section of this opinion, and we need not repeat them all here. It bears repeating, however, that Favela explained the Mexican court is authorized to reject a complaint sua sponte, without hearing from

22

the defendants.  Unilateral stipulations to submit to the jurisdiction of Mexican courts are insufficient, and while a party may tacitly submit to jurisdiction by filing a complaint, "if a person files a complaint before a Mexican court forced by the decision of a foreign court, it is questionable that there really is a spontaneous submission to its jurisdiction." Favela's opinions were in line with those of plaintiffs' expert, and with the position taken by defendants' expert in litigation in which he was a party.

On this record, we cannot say the court abused its discretion by finding plaintiffs' pleadings did not indicate bad faith.  Defendants believe plaintiffs tacitly submitted to the Mexican court's jurisdiction by filing the ordinary civil action, but the Mexican court viewed the matter differently and Favela found no fault with its ruling.

C

*Further Judicial Review in Mexico*

Defendants also submit plaintiffs acted in bad faith by not seeking any further judicial recourse in Mexico.  Defendants assert that plaintiffs should have demanded an opportunity to amend the complaints or appealed their rejection.  Defendants, however, do not explain how an amendment or appeal would have changed the result.  The only relevant issue is defendants' domicile, and Favela declared the Mexican courts properly dismissed the complaints, there were no irregularities in the procedure, and any appeal would have been fruitless.  The trial court could reasonably find the lack of further proceedings is not an indication of bad faith.

23

D

*Defendants' Mexican Actions*

Defendants also assert that plaintiffs' lack of good faith is confirmed by their refusal to participate in a declaratory relief action defendants filed in Mexico. Again, defendants violate basic principles of appellate practice by not accurately and fairly stating the critical facts. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531.)

The briefing on plaintiffs' second motion to lift the stay was completed in late November 2013, and a hearing was scheduled for December 13, 2013. On December 4, defendants, along with Eugenio Kocherga, filed a declaratory relief action in the Superior Tribunal of Justice of the Federal District in Mexico. This action, referred to as the "State Nullification Complaint," sought a "declaration of the invalidity of the illicit purchase and sale promise made between **Hahn** . . . and **Michael Kocherga** . . . and agreed between **Hahn** . . . and **Eugenio Kocherga** . . . , which is contained in the letter dated February 1, 2007 . . . ." On December 6, defendants filed a similar declaratory relief action in Mexico, referred to as " 'the Federal Nullification Complaint,' assigned to the Thirteenth Judge of the District as Case [No.] 608/2013."

At the December 13, 2013, hearing on plaintiffs' motion to lift the stay, their counsel advised the court: "When we came to court this morning, Your Honor, we were handed a lawsuit that these folks [defendants] filed in Mexico. And when we were before

24

Your Honor on August 13th[9], Your Honor expressly instructed parties that they should not be making any filings in Mexico.  And in contravention [of] Your Honor's instruction, they have now proceeded to file some kind of a lawsuit that I was just handed."

The court tacitly acknowledged it had instructed the parties not to make any further filings in Mexico.  It stated:  "I know that I was handed something.  That's probably what you're referring to.  I don't know what it is, . . . and *we will deal with [Code of Civil Procedure section] 128.5 issues and OSC re:  contempt issues at some other point if that's necessary*, but I don't think you ought to be using your time up on . . . these kinds of issues."[10]  (Italics added.)

The document defendants had filed and served was a request for judicial notice of the action filed in Mexico on December 4, and "Judicial Bulletin No. 215 dated December 11, 2013 (admitting the lawsuit . . . .)."  Defendants did not bring the December 6 action to the court's attention.  Defendants went on to agree to the court's outlined procedure for responding to Favela's forthcoming report.  The court ordered that the parties confine their responses to a memorandum not to exceed 10 pages, and that they not file additional declarations or documents.

---

9      Plaintiffs advise that their counsel misspoke and this date was actually May 23, 2013.  The exact date is not material.

10      Code of Civil Procedure section 128.5, subdivision (a) provides:  "A trial court may order a party, the party's attorney, or both to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

In April 2014, Favela issued his declaration, and the following month the parties filed their responses. Defendants violated the court's direction by applying ex parte for permission to lodge voluminous documentation, including the untranslated complaint they filed in Mexico on December 6, 2013, and an order admitting the complaint. Defendants also presented the declaration of the attorney who filed their complaints in Mexico, which stated, "I have decided to proceed only with the Federal Nullification Complaint and have dismissed the earlier State Nullification Complaint."

Defendants contend that plaintiffs could file a counterclaim in the December 6, 2013, action filed in Mexico, seeking damages based on defendants' alleged interference with the letter agreement between Hahn and Eugenio Kocherga, and their failure to do so indicates bad faith. Plaintiffs respond that a counterclaim is not available in the declaratory relief action to address their *tort* claims for damages, and the Mexican courts' rejections of their complaints have res judicata effect. Plaintiffs surmise defendants "waited—for over six months—until *after* Favela had issued his report to spring the . . . existence of an undisclosed Mexican complaint on the Superior Court and upon [plaintiffs] . . . for purposes of ensuring their ability to make arguments opposing the lifting of the stay that . . . Favela had not addressed."

Regardless of whether a counterclaim is available, defendants' position is unmeritorious. On June 4, 2014, the court held an ex parte hearing on defendants' request to lodge additional documents in response to Favela's declaration, including the December 6 Mexican action. The court issued a minute order *denying the request*. Defendants do not challenge the propriety of the ex parte ruling; they ignore it.

26

By not fairly recounting facts unfavorable to them, defendants have waived our review of the matter. Further, we decline to consider the December 6, 2013, Mexican complaint since it was not before the trial court and has no bearing on its good faith determination. " 'Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally "when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." ' " (*Hahn I, supra,* 194 Cal.App.4th at p. 1194; Evid. Code, § 459, subd. (a).)[11]

We find no abuse of discretion, and the court's implicit finding of good faith stands. The court properly lifted the stay because Mexico turned out not to be a suitable alternate forum. (See *Gutierrez v. Advanced Medical Optics, Inc.* (9th Cir. 2011) 640 F.3d 1025, 1030.) Defendants complain that plaintiffs " ' "gamed" the system in Mexico,' " but the trial court disagreed and the evidence amply supports its ruling. "As is standard in this type of review, we do not substitute our judgment for that of the trial court, and we will disturb the trial court's decision only if no judge could have reasonably made the challenged decision." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1046-1047; *Hernandez v. County of Los Angeles* (2014) 226 Cal.App.4th 1599, 1613.)

---

11    We deny defendants' January 13, 2015, request that we take judicial notice of documents pertaining to the December 6 suit, which were also not before the trial court.

IV

*Cross-Examination of Favela*

Defendants also urge us to reverse the court's order on the ground it erred by denying their request to cross-examine Favela. We are unpersuaded.

Evidence Code section 460[12] provides: "Where the advice of persons learned in the subject matter is required in order to enable the court to take judicial notice of a matter, the court on its own motion or on motion of any party may appoint one or more such persons to provide such advice. If the court determines to appoint such a person, he shall be appointed and compensated in the manner provided in Article 2 (commencing with Section 730) of Chapter 3 of Division 6." Section 454 provides: "(a) In determining the propriety of taking judicial notice of a matter, or the tenor thereof: [¶] (1) Any source of pertinent information, including the advice of persons learned in the subject matter, may be consulted or used, whether or not furnished by a party. [¶] . . . [¶] (b) Where the subject of judicial notice is the law of an organization of nations, a foreign nation, or a public entity in a foreign nation and the court resorts to the advice of persons learned in the subject matter, such advice, if not received in open court, shall be in writing."

Defendants first requested *cross-examination* of Favela under section 732 when they responded to his declaration. Section 732 provides: "Any expert appointed by the court under Section 730 may be called and examined by the court or by any party to the

_____

12    Further undesignated statutory references are to the Evidence Code.

action. *When such witness is called and examined by the court, the parties have the same right as is expressed in Section 775 to cross-examine the witness and to object to the questions asked and the evidence adduced*." (Italics added.) The court denied the request for cross-examination, explaining: "The Court has not 'called and examined' Dr. Favella [*sic*] pursuant to [section] 732. Rather, the court has requested a declaration. Counsel for each side has been given an opportunity to respond in writing to the declaration provided." The court's response was technically correct, as "cross-examination is limited to the scope of direct examination" (*Nienhouse v. Superior Court* (1996) 42 Cal.App.4th 83, 93; § 773), and the court elicited no direct examination.

Further, it is well established that a "judge is not required to listen to oral argument *on a motion*, but has the discretion to decide the matter solely on the basis of supporting affidavits." (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 36, p. 457, italics added; Code Civ. Proc., § 2009 ["An affidavit may be used to . . . obtain a provisional remedy, the examination of a witness, or a stay of proceedings . . . ."]; Cal. Rules of Court, rule 3.1306(a) ["Evidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown."].) Section 454, subdivision (b) contemplates that evidence from a foreign law expert, "if not received in open court, shall be in writing." The opinions defendants cite pertain to the right of cross-examination of investigators in child custody trials, not motion procedure. (*Washburn v. Washburn* (1942) 49 Cal.App.2d 581, disapproved of on another point in *Fewel v. Fewel* (1943) 23 Cal.2d 431, 436, 432; *In re Marriage of Russo* (1971) 21

29

Cal.App.3d 72, 76.) " '[I]t is axiomatic that cases are not authority for propositions not considered.' " (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1160.)

In any event, we need not interpret section 732, or attempt to harmonize it with motion procedure, because at the December 13, 2013, hearing on plaintiffs' motion to lift the stay, defendants agreed to proceed on Favela's forthcoming declaration *without any further hearing* or input other than a written response not to exceed 10 pages. To any extent section 732 gave them the right to a second hearing to take his live testimony, they relinquished the opportunity by freely acquiescing to the court's procedure.

Additionally, even without waiver defendants' position is unpersuasive because there is no suggestion the absence of Favela's live testimony resulted in any miscarriage of justice. (Code Civ. Proc., § 475 [no judgment or decision shall be reversed "by reason of any error" unless it appears from the record that without the error "a different result would have been probable"]; *Rosicrucian Fellowship v. Rosicrucian Fellowship Nonsectarian* (1952) 39 Cal.2d 121, 145 [no prejudicial error in disallowing cross-examination since "trial court may have felt that it was unlikely the witness would change her testimony on direct examination"].) Defendants had the opportunity to review Favela's declaration with their own expert and respond to it in detail. Further, his opinions on the domicile issue were in accordance with those of plaintiffs' expert, and with the position defendants' expert took in litigation in which he was a party. There is no suggestion the outcome would have been more favorable for defendants with Favela's live testimony.

30

Defendants raise other issues pertaining to the court's use of Favela, none of which merits discussion.  We are satisfied there was no irregularity or unfairness in the proceedings.

DISPOSITION

The petition is denied, and the stay this court issued on August 21, 2014, is vacated.  Plaintiffs are awarded costs on appeal.

McCONNELL, P. J.

WE CONCUR:


BENKE, J.


AARON, J.

31

Filed 5/21/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO DIAZ-BARBA et al., | D066462 |
| Petitioners, | (San Diego County Super. Ct. No. 37-2009-00083805-CU-BT-CTL) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | ORDER CERTIFYING OPINION FOR PUBLICATION |
| WOLFGANG HAHN et al., | |
| Real Parties in Interest. | |

THE COURT:

The opinion in this case filed April 27, 2015, was not certified for publication. A request by real parties in interest, Wolfgang Hahn and Nikita II, S.A., pursuant to California Rules of Court, rule 8.1120(a), for publication is GRANTED.

Defendants oppose the request, asserting in part that the request is untimely because it was not filed in this court within the 20-day period specified in California Rules of Court, rule 8.1120(a)(3). The 20-day period, however, was extended by two

court days (Code Civ. Proc., § 1010.6, subd. (a)(4)), and thus the request filed on May 19, 2015, was timely.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

McCONNELL, P. J.

Copies to:  All parties

2